**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

JUDITH RODRIGUEZ and MARYANN RIEDEL,
*on behalf of themselves and others similarly situated,*

                     Plaintiffs,

       v.

HANESBRANDS INC.

               Defendant.

---

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiffs, JUDITH RODRIGUEZ and MARYANN RIEDEL (together, "Plaintiffs"),

behalf of themselves and others similarly situated, by their undersigned attorneys, as and for their

Complaint against the defendant, HANESBRANDS INC. (hereinafter, "Defendant"), allege the

following based upon personal knowledge as to themselves and their own action, and, as to all

other matters, respectfully allege, upon information and belief, as follows (Plaintiffs believe that

substantial evidentiary support will exist for the allegations set forth herein after a reasonable

opportunity for discovery):

## NATURE OF THE ACTION

1.  This is a class action seeking redress for deceptive and otherwise improper business practices that Defendant engages in with respect to their marketing, advertising and promotion of their L'eggs® socks, tights and hosiery with "innovative run resistant technology". Plaintiff RODRIGUEZ purchased for her personal use the Silken Mist® Ultra Sheer Leg with Control Top – Black Mist product and Plaintiff REIDEL purchased for her personal use the 2-pair Silken Mist Ultra Sheer Leg with Control Top – Black Mist product (together, the "Purchased Products"). The Purchased Products are representative of the entire line of Products defined below in ¶ 2. The Products are produced in numerous colors, sizes and quantities as marketed on Defendant's website. Through an extensive, widespread, comprehensive and uniform marketing campaign, Defendant has engaged in, and continues to engage in, unconscionable business practices and deceptive acts in connection with the marketing and sale of the Products, which has injured Plaintiffs and the putative class.

2.  Defendant sold Plaintiffs and Class members, and continue to sell consumers the following socks, tights and hosiery products made with "innovative run resistant technology":

    a)  Silken Mist® Ultra Sheer Leg with Control Top – Black Mist
    b)  Silken Mist® Ultra Sheer Leg with Control Top – Sun Beige
    c)  Silken Mist® Ultra Sheer Leg with Control Top – Coffee
    d)  Silken Mist® Ultra Sheer Leg with Control Top – Jet Black
    e)  Silken Mist® Ultra Sheer Leg with Control Top – Nude
    f)  Silken Mist® Ultra Sheer Silky Sheer Leg with Control Top – Jet Black
    g)  Silken Mist® Ultra Sheer Leg with Control Top – Sun Beige
    h)  Silken Mist® Ultra Sheer Leg with Control Top – Nude
        A selection of the above products are also available in two-packs or
        multi-packs (collectively, the "Products").

3.  Defendant intended to create customer confusion by using unreliable and misleading language to describe their Products. Defendant has led Plaintiffs and reasonable customers to

believe that the Products' "innovative run resistant technology" will prevent more runs compared to non-L'eggs® socks, tights or hosiery.

4. Plaintiffs and the members of the proposed Class reviewed Defendant's misleading marketing and product packaging, reasonably relied in substantial part on the labels on the Product packaging and the Products' website and were thereby deceived in deciding to purchase the Products for a premium price.

5. Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who, from the applicable limitations period up to and including the present (the "Class Period"), purchased for consumption and not resale, the Products.

6. Defendant's actions constitute violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, as well those similar deceptive and unfair practices and/or consumer protection laws in other states. Defendant violated statutes enacted in each of the fifty states and the District of Columbia, which are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

a. Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak_ Code § 45.50.471, *et seq.;*
c. Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
d. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
e. California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
f. Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
g. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
h. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
i. District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
j. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
k. Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
l. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
m. Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

*n.* Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*

*o.* Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*

*p.* Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*

*q.* Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

*r.* Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

*s.* Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*

*t.* Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

*u.* Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*

*v.* Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

*w.* Michigan Consumer Protection Act, § § 445.901, *et seq.;*

*x.* Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

*y.* Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

*z.* Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

*aa.* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

*bb.* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

*cc.* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

*dd.* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*

*ee.* New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*

*ff.* New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq. ;*

*gg.* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq. ;*

*hh.* North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

*ii.* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

*jj.* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

*kk.* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

*ll.* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

*mm.* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

*nn.* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

*oo.* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq. ;*

*pp.* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

*qq.* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

*rr.* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act

*ss.* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

*tt.* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

*uu.* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

*vv.* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

*ww.* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

*xx.* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*

*yy.* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

4

## JURISDICTION AND VENUE

7.   This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed class consists of over 100 class members; (ii) at least some of the proposed class members have a different citizenship from Defendant; and (iii) the amount in controversy exceeds the sum of value of $5,000,000.00, excluding interest and costs.

8.   The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

9.   The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

10. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

11. This court has personal jurisdiction over Defendant because their Product is advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendant is authorized to do business in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

12. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and

Defendant is subject to personal jurisdiction in this District. Plaintiffs purchased Defendant's Products in Queens County.

## PARTIES

### *Plaintiffs*

13. Plaintiff RODRIGUEZ is a citizen of the State of New York and resides in Kings. Within the twelve month period prior to filing, Plaintiff RODRIGUEZ was exposed to Defendant's run resistance claims by reading the packaging of the Products at a Duane Reade store located in the Queens County. In reliance on the run-resistance claims on the packaging, Plaintiff RODRIGUEZ purchased the Purchased Product for personal consumption. The retail purchase price was approximately $6.99 for a pair of the Purchased Product. Plaintiff RODRIGUEZ used the Product as directed three times, but experienced holes and runs as quickly and as often as she had with other tights and hosiery products. As a result of such deceptive language used by the Defendant, Plaintiff RODRIGUEZ expected the L'eggs® brand Products to last longer and not rip or run like her regular tights and socks without "Run Resistant" claims. Therefore, Plaintiff RODRIGUEZ suffered injury in fact. Had Plaintiff RODRIGUEZ known the truth about Defendant's misrepresentations and omissions, she would not have purchased the Products but would have purchased less expensive sock, tights and hosiery products. Further, should Plaintiff RODRIGUEZ encounter the Products in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging. However, Plaintiff RODRIGUEZ would still be willing to purchase the current formulation of the Products so long as Defendant engages in corrective advertising.

14. Plaintiff RIEDEL is a citizen of the State of New York and resides in Suffolk County. Within the twelve month period prior to filing, Plaintiff RIEDEL was exposed to Defendant's

run resistance claims by reading the packaging of the Products at a Wal-Mart store located in the Suffolk County. In reliance on the run-resistance claims on the packaging, Plaintiff RIEDEL purchased the Purchased Product for personal consumption. The retail purchase price was approximately $8.97 for two pairs of the Purchased Product. Plaintiff RIEDEL used the Products as directed for approximately a week, but experienced holes and runs as quickly and as often as she had with other tights and hosiery products. As a result of such deceptive language used by the Defendant, Plaintiff expected the L'eggs® brand Products to last longer and not rip or run like her regular tights and socks without "run resistant" claims. Therefore, Plaintiff RIEDEL suffered injury in fact. Had Plaintiff RIEDEL known the truth about Defendant's misrepresentations and omissions, she would not have purchased the premium priced Products but would have purchased less expensive sock, tights and hosiery products. Further, should Plaintiff RIEDEL encounter the Products in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging. However, Plaintiff RIEDEL would still be willing to purchase the current formulation of the Products, absent the price premium, so long as Defendant engages in corrective advertising.

*Defendant*

15. Defendant HANESBRANDS INC. is a corporation organized under the laws of Maryland with its headquarters at 1000 East Hanes Mill Rd., Winston Salem, NC 27105 and an address for service of process c/o CSC-LAWYERS INCORPORATING SERVICE COMPANY, 7 St. Paul Street, Suite 820, Baltimore, MD 21202. Defendant manufactured, packaged, distributed, advertised, marketed and sold the Products to millions of customers nationwide.

16. Defendant develops, markets and sells tights and hosiery products under the "L'eggs®" brand name throughout the United States. The advertising for the Products, relied upon by

Plaintiffs, was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Products was designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiffs and the Class, into purchasing the Products. Defendant owns, manufactures and distributes the Products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

**Defendant Hanesbrands Inc.**

17. Defendant develops and manufactures sock, tights and hosiery products for consumers and professional markets. According to the official L'eggs® website, http://www.onehanesplace.com/shop/onehanesplace/Leggs, the Defendant provides such throughout the United States through a network of suppliers and stockists, including but not limited to supermarkets, department stores and convenience stores, such as CVS Pharmacy, Duane Reade, Fred Meyer, Target, Safeway, and a number of other national chain stores.

18. Defendant manufactures, markets and sells the L'eggs® socks, tights and hosiery with "innovative run resistant technology" including the Purchased Products, the Silken Mist® Ultra Sheer Leg with Control Top – Black Mist Product and the two-pack of the Silken Mist® Ultra Sheer Leg with Control Top – Black Mist Product.

**L'eggs® Socks, Tights and Hosiery**

19. Defendant manufactures, markets and sells a line of socks, tights and hosiery made with "innovative run resistant technology" that comprises L'eggs® Products, including the Silken Mist® Ultra Sheer Leg with Control Top – Black Mist Product. Photos of the Products and packaging are shown below:







20. Defendant has consistently conveyed the very specific message to consumers throughout the United States, including New York, that the Products "guard against runs and tears." Plaintiffs purchased the Products assuming that the Defendant's claims about the quality and technology of the Products are truthful and accurate. In reality, the Products feel no different than regular hosiery products and do not merit any pricing premium.

21. Defendant's misleading marketing campaign begins with their bombardment of the claim "run resistant" on their Products' packaging - the word appears twice on the packaging of the Purchased Product alone. Defendant's deceptive product description and claim inform the reasonable consumer that the Products will resist runs as they move about during the day. The claim, printed on the packaging multiple times, is therefore designed to give the false impression that the Products are more resistant to runs than other comparable sock, tights and hosiery and products.

22. The takeaway message from these representations is that consumers will experience the benefit of being able to use the Products much longer than they would other comparable sock, tights and hosiery products.

23. There is nothing significant about the Products and their "innovative run resistant technology" that differentiates them from non-L'eggs® sock, tights and hosiery products. Thus, Defendant's "run-resistant" claims are false, misleading and reasonably likely to deceive the public.

**The Impact of Defendant's Deceptive Conduct**

24. As a result of Defendant's deceptive tension relief and massage claims, consumers – including Plaintiffs and members of the proposed Class – have purchased Products that do not perform as advertised. Moreover, they were deprived of the benefit of their bargain and spent money for the Products over other socks, tights and hosiery Products sold in the market that do not claim to be "run resistant." The Products did not have any value or had less value than warranted or were Products that they would not have purchased and used had they known the true facts about them. A sample of other socks, tights and hosiery products are provided below:

| BRAND | QUANTITY | PRICE | SELLER |
|---|---|---|---|
| **L'eggs Womens Nylon Run Resistant Sheer Control Top Pantyhose (Jet Black)** | **1** | **$6.99** | **Duane Reade** |
| HUE Women's Opaque Sheer to Waist Opaque Tight (Espresso) | 1 | $5.49 | Amazon |
| No Nonsense Women's Super Opaque Control-Top Tights (Black) | 1 | $5.87 | Amazon |

25. Plaintiffs and members of the proposed Class have been and will continue to be deceived and/or misled by Defendant's deceptive claims. Plaintiffs and Class members purchased and used the Products during the Class period and in doing so, read and considered the Products' labels and packaging (including the representation that the Products are "run resistant") and based their decisions to buy the Products and pay the price premium on those representations. Defendant's claim was a material factor in influencing Plaintiffs' decisions to purchase and use the Products. Plaintiffs and Class members would not have purchased the premium priced Products had they known that Defendant's claim was false and misleading. Plaintiffs and the Class members have been damaged in their purchases of the Products and have been deceived into purchasing Products that they believed, based on Defendant's representations, would resist runs, when in fact, the Products do not.

26. Based on the purported claim conveyed in their marketing and advertising campaign, Defendant is able to price their Products at a premium over other socks, tights and hosiery products sold by their competitors.

27. Defendant has reaped enormous profits from their false, misleading and deceptive marketing and sale of the Products.

28. Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased the Products to stop the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products. Plaintiffs allege violations of New York's General Business Law § 349, for breach of express warranty, unjust enrichment and violations of consumer protection laws in all states and the District of Columbia.

29. Through this action, Plaintiffs seek injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs and all other relief available to the Class as a result of Defendant's unlawful conduct.

## CLASS ACTION ALLEGATIONS

*The Nationwide Class*

30. Plaintiffs RODRIGUEZ and RIEDEL bring this action as a class action pursuant Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

*The New York Class*

31. Plaintiffs RODRIGUEZ and RIEDEL seek to represent a class consisting of the following subclass (the "New York Class"):

> All persons who made retail purchases of the Products during the applicable limitations period in New York, and/or such subclasses as the Court may deem appropriate (the "New York Subclass").

32. Excluded from the Classes are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal

representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

33. Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

34. This action is proper for class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are thousands of Class members. Thus, the Class is so numerous that individual joinder of all Class members is impracticable.

35. Questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

    a. Whether Defendant's marketing, promotion and advertising of the Products is false, fraudulent, deceptive, unlawful or misleading;

    b. Whether the Products are produced with "innovative run resistant technology" as marketed by Defendant;

    c. Whether Defendant has breached warranties made to the consuming public about its Products;

    d. Whether Defendant's marketing, promotion, advertising and sale of the Products is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to a violation of the New York General Business Law § 349 for the New York Subclass;

e.   Whether Defendant's marketing, promotion, advertising and sale of the Products is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to consumer law violations in all other jurisdictions;

f.   Whether Plaintiffs and members of the Class sustained injuries or damages as a result of Defendant's false advertising of the Product;

g.   Whether Defendant's conduct constitutes unjust enrichment, and whether equity calls for disgorgement of unjustly obtained or retained funds, restitution to, or other remedies for the benefit of the Class;

h.   Whether Plaintiffs and members of the Class are entitled to equitable relief and prospective injunctive relief enjoining Defendant from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged in this Complaint; and

i.   Whether Defendant's conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or their ratio to the actual or potential harm to the Class.

36. Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein.  Plaintiffs purchased Defendant's Products during the Class Period and sustained similar injuries arising out of Defendant's conduct in violation of New York State law. Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused

directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

37. Plaintiffs will fairly and adequately represent and pursue the interests of the Class and has retained competent counsel experienced in prosecuting nationwide class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

38. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

39. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

40. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

41. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

42. Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

43. Plaintiffs RODRIGUEZ and RIEDEL reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

44. Plaintiffs RODRIGUEZ and RIEDEL bring this claim on behalf of themselves and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL § 349").

45. NY GBL § 349 provides that deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful.

46. Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

47. The practices employed by Defendant, whereby Defendant advertised, promoted, and marketed that their Products are "run resistant" are unfair, deceptive, and misleading and are in violation of NY GBL § 349.

48. Defendant should be enjoined from marketing their Products as being "run resistant" without further specification as described above pursuant to NY GBL § 349.

49. Plaintiffs RODRIGUEZ and RIEDEL, on behalf of themselves and all others similarly situated, respectfully demand a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

50. Plaintiffs RODRIGUEZ and RIEDEL reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

51. Plaintiffs RODRIGUEZ and RIEDEL bring this claim on behalf of themselves and the other members of the Class for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349.

52. Defendant's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

53. The practices of Defendant described throughout this Complaint were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, one or more of the following reasons:

    a.  Defendant engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Products, which did, or tended to, mislead Plaintiffs and the Class about facts that could not reasonably be known by them;

    b.  Defendant failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

    c.  Defendant caused Plaintiffs and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

     d.   Defendant failed to reveal material facts to Plaintiffs and the Class with the intent that Plaintiffs and the Class members rely upon the omission;

     e.   Defendant made material representations and statements of fact to Plaintiffs and the Class that resulted in Plaintiffs and the Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

     f.   Defendant intended that Plaintiffs and the members of the Class rely on its misrepresentations and omissions, so that Plaintiffs and Class members would purchase the Products; and

     g.   Defendant knowingly and falsely represented and advertised that the Products was fit to be used for the purpose for which it was intended, to resist runs, when Defendant knew that the Products did not work as promised.

54. Under all of the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

55. Defendant's actions impact the public interest because Plaintiffs and members of the Class were injured in exactly the same way as thousands of others purchasing the Products as a result of and pursuant to Defendant's generalized course of deception.

56. By committing the acts alleged in this Complaint, Defendant has misled Plaintiffs and the Class into purchasing the Products, in part or in whole, due to an erroneous belief that the Products are "run resistant." This is a deceptive business practice that violates NY GBL § 349.

57. Defendant's tension relief and massage claims misled Plaintiffs and are likely in the future to mislead reasonable consumers. Had Plaintiffs and members of the Class known of the

true facts about the Products' failure to work as promised, they would not have purchased the Products and/or paid substantially less for another product.

58. The foregoing deceptive acts, omissions and practices were directed at consumers.

The foregoing deceptive acts, omissions and practices set forth in connection with Defendant's violations of NY GBL § 349 proximately caused Plaintiffs and other members of the Classes to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products, and are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT III

## NEGLIGENT MISREPRESENTATION
### (All States)

59. Plaintiffs RODRIGUEZ and RIEDEL reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

60. Defendant, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

61. In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill their duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

62. Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

63. Plaintiffs and members of the Class would have acted differently had they not been misled – i.e. they would not have paid money for the Products in the first place.

64. Defendant has a duty to correct the misinformation they disseminated through their advertising of the Products. By not informing Plaintiffs and members of the Class, Defendant breached their duty. Defendant also profited financially as a result of this breach.

65. Plaintiffs and members of the Class relied upon these false representations and nondisclosures by Defendant when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

66. As a direct and proximate result of  Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Products, and any interest that would have been accrued on all those monies, all in an amount to be determined according to proof at time of trial.

67. Defendant acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiffs and members of the Class.

68. Plaintiffs and members of the Class are entitled to punitive damages.

69. Therefore, Plaintiffs pray for relief as set forth below.

## COUNT IV

## COMMON LAW FRAUD
### (All States)

70. Plaintiffs RODRIGUEZ and RIEDEL reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

71. Defendant intentionally made materially false and misleading representations regarding the prizes available from the Products.

72. Plaintiffs and members of the Class were induced by, and relied on, Defendant's false and misleading packaging, representations and omissions and did not know at the time that they were purchasing the Products that did not work as promised.

73. Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing Products that resist runs as advertised.

74. Defendant knew or should have known of their false and misleading labeling, packaging and misrepresentations and omissions. Defendant nevertheless continued to promote and encourage customers to purchase the product in a misleading and deceptive manner.

75. Plaintiffs and members of the Class have been injured as a result of Defendant's fraudulent conduct.

76. Defendant is liable to Plaintiffs and members of the Class for damages sustained as a result of Defendant's fraud, in an amount to be determined at trial. As a proximate result of Defendant's breach of warranties, Plaintiffs and Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for Products that did not conform to what Defendant promised in their promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on Products that did not have any value or had less value than warranted or Products that they would not have purchased and used had they known the true facts about them.

## COUNT V

## UNJUST ENRICHMENT
### (All States)

77. Plaintiffs RODRIGUEZ and RIEDEL reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

78. Defendant received certain monies as a result of their uniform deceptive marketing of the Products that are excessive and unreasonable.

79. Plaintiffs and the Class conferred a benefit on Defendant through purchasing the Products and Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefits conferred on them.

80. Defendant will be unjustly enriched if they are allowed to retain such funds and each Class member is entitled to an amount equal to the amount they enriched Defendant and for which Defendant has been unjustly enriched.

81. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that they received from Plaintiffs, and all others similarly situated, in light of the fact that the benefits of the Products purchased by Plaintiffs and members of the Class, was not what Defendant purported them to be by their labeling and packaging.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs RODRIGUEZ and RIEDEL, on behalf of themselves and all other similarly situated, seek judgment against Defendant, as follows:

a. An Order that this action be maintained as a class action and appointing Plaintiffs as representative of the Class;

b. An Order appointing the undersigned attorney as class counsel in this action;

c. Restitution and disgorgement of all amounts obtained by Defendant as a result of their misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.  All recoverable compensatory and other damages sustained by Plaintiffs and members of the Class;

e.  Actual and/or statutory damages for injuries suffered by Plaintiffs and members of the Class and in the maximum amount permitted by applicable law;

f.  An order (1) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (2) enjoining Defendant from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (3) ordering Defendant to engage in a corrective advertising campaign; and (4) requiring Defendant to reimburse Plaintiffs and all members of the Class the amounts paid for the Product;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

**i.**  Such other relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.


Dated: March 20, 2016

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*


By:   /s/ C.K. Lee
          C.K. Lee